Next argued case is number 2012-16-22 COPPER INNOVATIONS v. NINTENDO Ms. Luke Good morning. The district court improperly imported limitations into the claim language. The district court erred when it imported hardware encoded into identification number. But doesn't the specification of column 7 say every transmitter unit has unique hardware encoded identifying them? Yes. So the district court zeroed in on that one sentence of this entire specification that says that. That is the only time hardware encoded is ever mentioned in the specification in the claims or in the prosecution history. Are there examples elsewhere in the specification of identifying numbers without being hardware encoded? Well, the scope of the invention is larger than that. If you look further in that paragraph, Mr. Copper said that this affords a means of identifying the source of communication sent to a receiver and to a host computer and also provides a means for rejecting data sent from a transmitter. This was a design choice of Mr. Copper's. It was a preferred embodiment. And it doesn't limit his invention to just the hardware. But are there other embodiments without being hardware encoded described in the specification? He doesn't describe other ones, although he does say that there are other embodiments that can be used. Didn't your experts say that the hardware encoded limitation was reasonable? It's reasonable. That's what he used as his preferred embodiment when he actually created 2,000 of these systems. He actually bought a box of Texas Instruments semiconductor chips. And the chips were hardware encoded numbers, and so he threw them into the system. But he does say in column 11 that although certain preferred embodiments have been shown and described, it should be understood that many changes and modifications may be made. But that's not a disclosure. No. That's boilerplate before the claims in every application which say, in effect, even though I'm not disclosing anymore, I want to cover anything that is close. I think in this situation, for this invention, Mr. Copper, it wasn't boilerplate language for him. He was saying that other electrical engineers at the time of this invention would have known that other ways to provide a unique identifying number for a transmitter could be done. So, if you look at column 4, where he does a brief description of the figures, in line 48, so figure 5 is a schematic of one form of the transmitter of the invention. Figure 6 is a block diagram of one form of the transmitter, because he's trying to describe his form that he created, because under 112 he has to do that. So he doesn't go through and describe other ways, but under the case law here, just because you describe one embodiment doesn't mean that his invention is limited to that one embodiment. If you look at LiBoFluoroshine or Teleflex, he never had any clear intent. But he's not teaching the public of other embodiments. He says that others might exist. That's correct. There are others that exist. And it wasn't a point of novelty in this invention, the hardware encoded. If it were a point of novelty, he would have described it more, he would have gone into it more, but it wasn't in the claim language when he first filed the invention for the application, and it wasn't in any of the arguments that he made to the PTO to get this invention allowed. So looking at also ConnectPacket. Again, the district court erred when it imported hardware encoded ID number into ConnectPacket. And if you look at the reasoning that the district court chose to rely on for the unique hardware encoded identification number, which is that one sentence in column 7, column 11 for ConnectPacket, line 4, the district court looked at every packet also contains the status byte and the two-byte identifying number of the transmitter unit. But it cherry-picks only part of the sentence. It includes status data into the claim language, but then forgets the rest of it, which is the two-byte identifying number. So that reasoning internally is inconsistent for the district court to do that. And it was improper to import those limitations into the claim. And also, if you look at the prosecution history for ConnectPacket, that limitation is included in Claim 5. It's not included in Claims 1 through 4, but in Claim 5, on line 56, it says, said each transmission comprising a data packet comprising status data and the said identification number. The district court chose to import that limitation into Claims 1 through 4. Now that's specifically in another claim, but they imported it into the claim language. That's also improper. And lastly, if you look at previously designated identification number, the specification and the claim language is broader than the claim construction. So if we look at Claim 1 in column 12 in Step A, if you look at the antecedent article, it says, transmitting an identification number, that's the first number, as a part of each transmission from each transmitter to the equipment. And B, comparing the identification number, that's the same number, in each transmission received by the equipment with a previously designated identification number. That's a different number. And so Mr. Copper, actually, his invention covers more than one number being designated between the transmitter and the console. And the district court again erred when it imported a limitation saying that it had to be the same number and it had to be the same hardware encoded identification number. Hasn't your client engaged in a change of argument throughout these proceedings? No, Judge Larry. Actually, after the adverse claim construction was entered in order, he did try to, under the local patent rules, to submit an infringement contention that was supplemental and the court struck it, saying that it wasn't allowed under local patent rules, it wasn't timely. At that point, we gave up on that and it's not a part of this appeal. Because you can have an adverse claim construction once you do. His objections merged into the final judgment and are appealed here, which is the original infringement contention. When does this patent expire? I actually didn't even look into that, Judge Larry. June 97 is its date of issuance. And since it goes back to a division that was filed in 92, it's under the old system, right? That's correct. So it's 17 years from 97, which is next June, right? I believe you, Judge Larry. Do you have any other questions for me? All right, we'll save the rest of your time. Okay. Are there any more questions? Thank you. Mr. Blatche. Thank you, Your Honor. May it please the Court. I believe the patent expired in 2011. Oh, it did expire? It had a 1991 filing date. Yes. And so given 20 years from the 1991. I know that that was, the other one was a continuation of 91. Okay, it expired. Thank you, Your Honor. This is a, it's not your typical summary judgment of non-infringement. The district court granted a summary judgment based on the fact that there was no operative opposition to the summary judgment motion. Copper had submitted an opposition based on one of the new infringement theories that it was trying to put forth. The court found that improper, struck the opposition, and on that basis found that there was no opposition to the summary judgment motion, and therefore entered summary judgment in Intendo's favor. That's kind of an interesting and somewhat unique circumstance, because here we are evaluating or purportedly evaluating the claim construction when there is no connection between the claim construction and the entry of summary judgment. Well, that's because the claim construction was changed, or at least their proposed claim construction was not adopted. You're right. It wasn't adopted. But my point is that the entry of summary judgment had nothing to do with the claim construction. That was based on your view of the claim, right? Your motion for summary judgment. No, it was based on the district court striking their opposition and then expressly stating in its decision that there was no operative opposition to the summary judgment motion. Therefore, summary judgment was entered in Intendo's favor. Because the district court construed the claim in accordance with your position. Isn't that right? Well, in some respects, the district court did construe the claim as Nintendo proposed. In some respects, the district court construed the claim as Copper proposed. And in some respects, the district court found its own way of construing the claim that was proposed by neither Nintendo nor Copper. But my point, Your Honor, was that the claim construction wasn't connected to the entry of summary judgment. Are you arguing that this was a concession in effect? Apparently, it was a concession, in part because there was no challenge to the district court's order striking the opposition. Because on the district court's claim construction, they lose on infringement. But there's no indication in the record of that, Your Honor. There's no stipulation from Copper saying, based on this construction, we stipulate. Why did they have to stipulate? So that this court can have jurisdiction to hear the claim construction. They're construing the final judgment based on claim construction. Well, and that's my point, Your Honor. The court didn't base it on the claim construction. The district court based it on the fact that there was no operative opposition. If they don't prevail on their claim construction, then it's over. Well, but also, there's nothing in the record to indicate that they would prevail if the claim construction were reversed. Right? There's nothing... All right. We're going back and forth. Let's discuss the merits of the issues of claim construction. Okay. So with identification number, for example, one of the issues that the district court had was the sentence that Judge Lurie pointed to about every transmitter unit has a unique hardware-encoded identifying number. That's in column seven of the spec. And Copper proposed that the construction of identification number should include unique, which it pulled from that sentence in the spec. But it said, but don't include hardware-encoded. We want unique, but we don't want hardware-encoded. And the district court, frankly, the magistrate judge and then the district judge, reviewing the report and recommendation, both scratched their heads and said, why is it proper, Mr. Copper, to include unique? And then not include hardware-encoded. And that was one of the factors in their decision. Another was that they made the point that this wasn't described as an example or it wasn't described as a preferred embodiment.  And for example, I can direct the court to column 11, line 56 on page 8126, where the specification says we use an infrared beam to transmit, but you could also use an electric or electronic beam. And so it was explaining that there are other possibilities. It also said we're using this controller to control the cursor on a computer monitor, but you could also use it to control lights or sound equipment or other equipment. The claims do not expressly use the terminology unique hardware-encoded identification number. They use the term identification number. But in the context of the invention, the identification number needs to be unique and hardware-encoded. In other words, you're saying the construction, the specification controls in the construction of the claim? Well, I'm saying the specification needs to be read so that it can be used to interpret what the claim means by identification number. Even in the absence of a word in the claim that we're construing? Yeah, otherwise, what's the point of the specification? Oh, we're construing identification number. Right, right. And, you know, the language that the court pointed to, the column 7, line 5 language, is the language that both sides pointed to and said when court, when you're construing the term identification number, look at this language, and that's where it says unique hardware-encoded identifying number. It's almost as if, in the context of the invention, it's almost as if you think of it in terms of a fingerprint, right? What's the value of a fingerprint for use in identification? One, it's unique. We all have different fingerprints, so the fingerprint is unique to us. But what's the other part, the importance of it? The other important part is that it doesn't change, right? So if my fingerprint is on file, then they know whoever's looking for it a week from now, a year from now, five years from now, that if they see my fingerprint, they know that I'm the one with that fingerprint. And in the context of the invention, when you read the claim, that's exactly what the identification number is using with the transmitter. It's identifying which transmitter it came from, but it's not, the identification number isn't changing. So the next time the receiver gets that identification number, it knows that it's from that same transmitter. In addition, as Judge Wallach pointed out, their expert agreed that it was a perfectly reasonable interpretation of the term identification number. And what's really going on here is this was an invention that was conceived, or at least the application was filed in 1991, at a time where Bluetooth didn't exist, it wasn't known, or it hadn't been conceived yet. It didn't come until the late 1990s. But what we're trying to do, or what Mr. Cochran was trying to do, is take what he claimed in his invention and use it to cover what was later developed technology. And so there was nobody skilled in the art at the time of the invention, circa 1991, that was thinking of anything other than hardware-encoded identification numbers. I'm happy to address any other questions the Court may have. Any more questions? Thank you, Your Honor. Thank you, Mr. Podolsky. Your Honors, you're correct. I mean, it's reasonable to say that hardware-encoded is the way you can make an identification number for the transmitters, but it's not the only way. And the claim language is broader than that. What happened in this invention is there are multiple transmitters talking to one console, wirelessly. How is the language broader? What about identification number? Where is broader language? Well, the claim language itself just says an identification number, so that the console and the transmitter know who they're talking to. If he'd wanted to, he would have put it in there. It doesn't say identification number. That does not have a unique hardware encoded. No. You know, Nintendo relies on the case Nystrom v. Trex, which is talking about a board in the claim language. And it never talks about what kind of board it is, whether it's wooden, from lumber, or log. You know, all of these cases of this nature are fact-dependent. Right. What does the spec say, and what does the claim say? Exactly. And in that case, wood or lumber was used 23 times in a six-column patent. Here, hardware encoded was used only one time, and one time only, and that was in the preferred embodiment. It was never discussed again as, you know, being the only way to make a unique identification number in a transmitter. It was never discussed as a point of novelty. It was an example of how to get a unique identification number. And that's it. So I really urge this Court to not allow this improper claim construction to stand, because it improperly imports limitations into the claim. Thank you so much. Thank you. Thank you. And it's welcome, Mr. Sebastian. The case is taken under submission. All rise. The objection is tomorrow morning at 10 a.m.